IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **CRISTIANO ALMEIDA,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**N.A.R., INC.,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:22-CV-423-DAK-DAO<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

This matter is before the court on Defendant N.A.R. Inc.'s ("NAR") Rule 12(b)(6) Motion to Dismiss [ECF No. 8] and Rule 12(b)(1) Motion to Dismiss for Lack of Standing [ECF No. 9]. On December 7, 2022, the court held a hearing on the motions via Zoom videoconferencing due to the Covid-19 pandemic. At the hearing, Robert Yusko represented Plaintiff Cristiano Almeida, and Ronald F. Price represented Defendant NAR. The court took the motions under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Christiano Almeida brought this action against Defendant NAR for alleged violations of the Fair Debt Collection Practices Act in connection with a collection letter NAR sent Almeida on February 23, 2022, seeking payment of a debt Almeida owed to Red Key Property Management LLC. NAR essentially used the Model Letter that the Consumer Financial Protection Bureau ("CFPB") recently adopted for debt collectors to use.

Specifically, NAR's letter stated that NAR was a debt collector, that Almeida owed the original creditor, Red Key, $2378.00 as of January 17, 2022, and that between January 17, 2022,

1

and the date of the letter $42.12 in interest and $951.20 in fees had accrued, for a total debt owed of $3371.32. Under a heading entitled "How can you dispute the debt?" the letter informed Almeida that he could call or write NAR by March 30, 2022, to dispute all or part of the debt, and that if he did not contact NAR, NAR would assume its information was correct. The letter also stated that if Almeida contacted NAR by March 30, 2022, NAR must stop collection on any amount he disputed until NAR sent him information showing that he owed the debt. Under another section of the letter, entitled "What else can you do?," the letter explained that Almeida could write to ask the name and address of the original creditor, go to www.cfpb.gov/debt-collection to learn more about his rights under federal law, and/or contact NAR about his payment options. This section of the letter informed Almeida that NAR must stop collecting on the debt if he contacted them for information on the original creditor by March 30, 2022, and that federal law gave him the right to stop or limit how NAR contacted him. Both sections of the letter referred Almeida to a form at the bottom of the letter that he could use to contact NAR. The form provided NAR's address and a section entitled "How do you want to respond?" The response section provided boxes to check for ways to dispute the debt, for more information on the original creditor, and for identifying the amount of enclosed money if he was submitting payment on the debt. However, Almeida did not need to use the form to contact NAR. The letter also stated that Almeida could write to them without the form.

Almeida did not contact NAR, did not pay the debt, and NAR brought a collection action against him in Utah State Court. Almeida did not respond in the state court action but filed the FDCPA action in this court on June 24, 2022. Almeida alleges that NAR's collection letter violated the FDCPA because it failed to notify Almeida whether interest would continue to accrue on the debt in the future. Because NAR's letter did not clarify whether interest would continue to

accrue on the debt, Almeida asserts that the letter failed to state the actual amount of the debt that was due and owing with sufficient clarity under the FDCPA. NAR's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) relates to whether Almeida's claims regarding the letter state a FDCPA claim.

Three days after Almeida filed this federal action, NAR obtained a default judgment against Almeida in the state court collections action on June 27, 2022. On July 21, 2022, NAR personally served Almeida with a writ of execution and hearing request. The writ of execution provided, in part, that the Constable was to 'collect the judgment with costs, interest, and fees, and to sell enough of [Almeida]'s non-exempt equitable claims, legal claims, demands, debts, rights to sue, causes of action, offsets, lawsuits, and/or chose in action of any kind." It then specifically identified the claims in this court against NAR. Almeida did not contest the writ of execution.

Pursuant to the writ of execution, the Constable held a sale on August 9, 2022. At the Constable's sale, NAR purchased Almeida's lawsuit against NAR and all of Almeida's rights, title, and interest in the claims Almeida purports to assert against NAR. Almeida never appeared in the state court action, never attempted to have default set aside, never opposed or objected to the writ of execution to prevent the Constable's sale, never appealed the default judgment, and never filed any motion with the state court to vacate or set aside the writ of execution or the execution sale. NAR brought a second motion to dismiss for lack of standing after it purchased Almeida's lawsuit and claims at the Constable's sale.

## DISCUSSION

### NAR's Motions to Dismiss

NAR initially brought a Motion to Dismiss Almeida's Complaint for failure to state a claim under the FDCPA, asserting that its letter is essentially the CFPB's Model Letter and, therefore,

NAR is entitled to "safe harbor" under the FDCPA. NAR then filed a second Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing after it purchased Almeida's claims against it at the August 9, 2022 Constable's sale. The court will first address the Rule 12(b0(1) motion to dismiss for lack of standing first. "Whether a claimant has constitutional standing is a threshold jurisdictional question." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008).

## Motion to Dismiss for Lack of Standing

NAR moves to dismiss this action for lack of standing because it purchased Almeida's right to this action and Almeida, therefore, no longer has a legally protected interest in this action. "[A] plaintiff's standing is contingent upon entitlement to enforce an asserted right." *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009). "If, during the pendency of the case, circumstances change such that the plaintiff's legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009).

"Under Utah law it is well-established that a chose in action . . . may ordinarily be acquired at an execution sale to satisfy a judgment." *Wing v. Horne*, Case No. 2:08-cv-717, 2009 WL 2929389, *4 (D. Utah Sept. 8, 2009). The Utah Supreme Court has "held that individuals may purchase choses in action, even against themselves." *Bradburn v. Alarm Protection Technology, LLC*, 2019 UT 33, ¶ 14, 449 P.3d 33. Once that happens, a plaintiff loses standing to pursue the claims they previously owned. *RMA Ventures*, 576 F.3d at 1076.

Almeida argues that the court should set aside the Constable's sale under principles of comity and reverse abstention because it interferes with this court's ability to bring this case to a conclusion on the merits. Almeida contends that NAR's purchase of Almeida's

FDCPA claims amounts to an impermissible interference with this court's proceedings and this court should hold that the Constable's sale was a violation of a reverse *Younger* abstention doctrine and set the sale aside.

But this argument ignores the long-standing concurrent jurisdiction that exists between state and federal courts. Almeida had several opportunities to assert his rights in NAR's state court collections action. Almeida does not claim that he was not notified of or unaware of the state court action. Almeida could have brought his FDCPA claims as counterclaims in the state court action. Almeida filed this federal action three days before the state court entered default judgment. However, he could have appeared in the state court action and prevented that court from entering default. He also could have moved to stay the state court action pending a resolution of the FDCPA claims in this court.

Once the state court entered default judgment, Almeida could have moved to set aside the default, could have opposed the writ of execution and sale, and could have appealed the state court judgment. Instead, Almeida took no action to protect his rights in the state court action and now asks this court to overturn what happened in that case. But this court does not sit as an appellate court to a state district court. The two court systems are separate and, as evidenced by the facts of this case, can move forward on parallel tracks. A party ignores one forum at his or her own peril.

As in *RMA* Ventures, 'Plaintiff had numerous opportunities to avoid this outcome." *Id.* The Tenth Circuit explained that "even if a sufficient ground exists for us to void the sale of this cause of action, Plaintiff waived any such argument by failing to appeal the district court's denial of the motion to stay or quash execution." *RMA Ventures*, 576 F.3d at 1076. The court then proceeded to list several other procedural steps the plaintiff could

have taken to protect its rights. *Id.* Almeida, in this case, similarly, failed to take advantage of procedures that could have avoided this outcome.

Almeida claims that federal common law gives this court the power to issue an injunction setting aside the Constable's sale. "It has been repeatedly held that in order to maintain the jurisdiction of the federal court, properly invoked, and render its judgment and decrees effectual, proceedings in state court which would defeat or impair such jurisdiction may be enjoined." *Clinton v. Coppedge*, 2 F. Supp. 935, 937-38 (N.D. Okla. 1933); *see also Looney v. E.T.R. Co.*, 247 U.S. 214, 221 (1918) ("The use of the writ of injunction, by federal courts first acquiring jurisdiction over the parties or the subject matter of a suit, for the purpose of protecting and preserving that jurisdiction until the object of the suit is accomplished and complete justice is done between the parties, is familiar and long-established practice.")

However, an order vacating the execution sale would violate the federal Anti-Injunction Act. "Under the Anti-Injunction Act, this Court may not grant 'an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Derma Pen*, 2015 WL 791595, at *4 (quoting 28 U.S.C. § 2283). Almeida does not address the Anti-Injunction Act or address any of the requirements necessary for a federal court to enter an injunction against a state court. There appears to be no basis for enjoining a lawfully obtained judgment and writ of execution. What Almeida asks this court to do would therefore violate the Anti-Injunction Act. Moreover, Almeida improperly asks the court for an injunction against the state court's proceedings in opposition to a motion to dismiss without filing a motion to that effect. Under this

District's local rules, DUCiv 7-1(a)(3), a party cannot make a motion in an opposition memorandum. Almeida's request to vacate the execution sale is also denied because there is no motion asking for that relief.

Almeida further argues that the court should continue to exercise jurisdiction over his FDCPA claims and issue an injunction setting aside the Constable's sale under principles of constructive possession applicable in *in rem* cases. "To avoid unseemly and disastrous conflicts in the administration of the dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction, the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Derma Pen, LLC v. 4EverYoung,Ltd.*, No. 2:13-CV-729-DN-EJF, 2015 U.S. Dist. LEXIS 23782, at *9-10 (D. Utah Feb. 25, 2015). "Where 'the two suits are *in rem* or *quasi in rem* . . . the jurisdiction of one court must of necessity yield to that of the other.'" *Id.* at 11.

In *Derma Pen*, the court examined which of the two courts came into possession of the *res* first and determined that it had been in constructive possession of the *res* prior to the institution of the state court action. *Id.* at 13-14. A counterclaim for specific performance regarding the sale of a trademark was filed May 2, 2014, and the state court action also seeking a sale of the same trademark was not filed until December 22, 2014. *Id.* Therefore, the court determined that the state court action had to yield to the federal court action. *Id.*

In this case, Almeida claims that the FDCPA claims are the chose in action and this court acquired the *res* when Almeida filed his action on June 24, 2022. According to Almeida, NAR allegedly interfered with this court's possession of the *res* when it obtained

a writ of execution against Almeida in the state court action on July 21, 2022, and then bought the action at the Constable's sale on August 9, 2022. Although Almeida acknowledges that the state court was filed first, he argues that the state court did not come into possession of the *res* in that action until it granted default judgment on June 27, 2022, three days after Almeida filed the federal action.

Almeida's arguments, though creative, confuse *in rem* and *in personam* jurisdiction and are contrary to long-standing abstention law. *Derma Pen* was an *in rem* action, and Judge Nuffer made clear that it was distinguishable from an *in personam* proceeding: "[w]hen the judgment sought is for the 'recovery of money or for an injunction compelling or restraining action by the defendant" then "the judgment sought is strictly *in personam*.'" *Derma Pen*, 2015 WL 791595, at *3. "A judgment *in personam* imposes a personal liability or obligation on one person in favor of another. A judgment *in rem* affects the interest of all persons in designated property." *Aequitas Enters., LLC v. Interstate Inv. Group, LLC*, 2011 UT 82, ¶ 10, 267 P.3d 923.

In the state court action, NAR sought a money judgment against Almeida. And, in this court, Almeida sought a money judgment against NAR for alleged violations of the FDCPA. Neither the state court action for collection of the debt nor this federal action alleging FDCPA violations is an *in rem* action. Both actions are *in personam* actions.

Almeida's arguments conflate *in personam* and *in rem* jurisdiction in a way that would upend the traditional parallel jurisdiction of state and federal courts. Because this is an *in personam* action, "both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res judicata in the other." *Derma Pen*, 2015 WL 791595, at *3.

Almeida improperly argues that his court should ignore the traditional concept of concurrent jurisdiction and invoke an entirely new concept of reverse abstention, which has not been adopted in *in personam* actions.   There is no property over which this court has jurisdiction that the state court interfered with and no basis for vacating the writ of execution or execution sale.

As stated above, Almeida had the opportunity to oppose the collection action. Almeida makes no claim that NAR failed to serve him properly or failed to give him notice of any of the proceedings that occurred in that action.   Almeida cannot choose to ignore the state court action and then expect this court to interfere in or reverse the outcome of that action.   Almeida's argument that somehow this court obtained jurisdiction first is creative, but incorrect.   The state court action was filed first and proceeded properly.   As stated in *Derma Pen*, that judgment is now *res judicata* in this court.

Almeida asserts that case law in this area is replete with judges' disdain for parties buying actions against themselves.   But such disdain has not changed the governing Utah law on this issue.   Almeida acknowledges that Utah law, considering all the policy ramifications, generally accepts the ability of defendants to purchase a debtor plaintiff's chose in action, even if it eliminates standing.1   *Id.* at 1075; *see also Miller v. Fluent Home, LLC*, No. 2:20-CV-641-HCN-JCB, 2021 U.S. Dist. LEXIS 257097, at *10 (D. Utah Mar. 18, 2021) ("NEPC properly acquired Mr. Miller's legal claims, rights to sue, and lawsuits against the NPEC Defendants here through a writ of execution.   This extinguished Mr. Miller's legal interest in the instant lawsuit and divested him of standing.").

---

1   This is not an exceptional case, like a legal malpractice case, where the general rule may not apply.   *See, e.g., Snow, Nuffer, Engstrom & Drake v. Tanasse*, 980 P.2d 208 (1999).

9

Despite conceding that Utah courts and the Tenth Circuit applying Utah law have allowed Defendant's to purchase choses in action against them, Almeida urges this court to reject Utah law and Tenth Circuit precedent. This court is not in a position to do so. Almeida offers several novel theories as to why the court should deny NAR's motion but none of these creative arguments provide a legal basis for rejecting binding precedent.

NAR followed a procedure expressly permitted by Utah law and legally obtained this chose in action. Accordingly, Almeida no longer has a legal interest in this action and thus lacks standing. The court, therefore, grants NAR's Rule 12(b)(1) Motion to Dismiss for Lack of Standing. Because Almeida lacks standing, the court will not address the merits of NAR's Rule 12(b)(6) Motion to Dismiss.

## CONCLUSION

Based on the above reasoning, Defendant NAR's Rule 12(b)(1) Motion to Dismiss for Lack of Standing [ECF No. 9] is GRANTED, NAR's Rule 12(b)(6) Motion to Dismiss [ECF No. 8] is MOOT. This action is dismissed.

DATED this 19th day of December, 2022.

BY THE COURT:

_Dale A. Kimball_
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE